JOHN S. SARGETIS (SBN: 80630)
DANNY A. BARAK (SBN: 252066)
**UNITED LAW CENTER**
3013 Douglas Blvd., Suite 200
Roseville, CA 95661
Tel: (916) 367-0630
Fax: (916) 265-9000

Attorneys for Plaintiffs,
ROBERT FERGUSON and NANCY FERGUSON

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FERGUSON and NANCY FERGUSON | **Case No. 2:14-CV-00328-KJM-KJN** |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION** |
| v. | |
| JPMORGAN CHASE BANK, N.A., and DOES 1 through 50, inclusive, | **Date:** March 28, 2014<br>**Time:** 10:00 a.m.<br>**Dept.:** 3 |
| Defendants. | **Complaint Filed:** July 5, 2013<br>**Trial Date:** Not Set |

## <u>TABLE OF CONTENTS</u>

I.   Introduction...................................................................................................... 1

II.  Factual Background ........................................................................................... 1

III. Argument .......................................................................................................... 4

a.   Standard of Review.......................................................................................... 4

b.   Plaintiffs' Claims Are Not Time-Barred........................................................... 4

c.   Plaintiffs Sufficiently Plead Intentional and Negligent Misrepresentation ........................ 6

d.   Plaintiffs Sufficiently Plead Promissory Estoppel ........................................... 11

e.   Plaintiffs Sufficiently Plead Breach of Contract.............................................. 13

f.   Plaintiffs Sufficiently Plead Business and Profession Code §17200 et seq. .................... 15

g.   Plaintiffs Can Maintain a Cause of Action For Equitable Accounting............................. 18

h.   Plaintiffs Can Maintain a Cause of Action For Unjust Enrichment .................................. 19

IV.  Conclusion ...................................................................................................... 20

## California Authorities

*Aceves v. U.S. Bank, N.A.*

   (2011) 192 Cal.App.4th 218 ........................................................................ 7, 8, 12

*Blankenheim v. E.F. Hutton & Co.*

   (1990) 217 Cal.App.3d 1463 ..................................................................................... 7

*Broberg v. Guardian Life Ins. Co. of Am.*

   (2009) 171 Cal. App. 4th 912 ................................................................................... 10

*Buckland v. Threshold Enterprises, Ltd.*

   (2007) 155 Cal. App. 4th 798 ................................................................................... 18

*Bushell v. JPMorgan Chase, N.A.*

   (2013) 220 Cal.App.4th 915 ................................................................... 8, 12, 13, 14

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*

   (1983) 35 Cal. 3d 197 ................................................................................................ 6

*Ghirardo v. Antonioli*

   (1996) 14 Cal. 4th 39 .............................................................................................. 19

*Gray v. Don Miller & Associates, Inc.*

   (1984) 35 Cal.3d 498 ......................................................................................... 7, 13

*Guido v. Koopman*

   (1991) 1 Cal.App.4th 837 .......................................................................................... 7

*Huskinson & Brown, LLP v. Wolf*

   (2004) 32 Cal. 4th 453 ............................................................................................ 19

*Klein v. Chevron U.S.A., Inc.,*

   (2012) 202 Cal. App. 4th 1342 ................................................................................ 17

*Kong v. City of Hawaiian Gardens Redevelopment Agency*

   (2002) 108 Cal. App. 4th 1028 .................................................................................. 9

*Kwikset Corp. v. Superior Court*

   (2011) 51 Cal. 4th 310 ............................................................................................ 18

*Linear Technology Corp. v. Applied Materials, Inc.*

  (2007) 152 Cal.App.4th 115 ................................................................ 17

*McClain v. Octagon Plaza, LLC*

  (2008) 159 Cal.App.4th 784 .................................................................. 8

*McKell v. Washington Mutual, Inc.*

  (2006) 142 Cal.App.4th 1457 ............................................................. 17

*People v. McKale*

  (1979) 25 Cal. 3d 626 .......................................................................... 17

*PH II, Inc. v. Superior Court*

  (1995) 33 Cal. App. 4th 1680 ................................................................ 9

*Phillippe v. Shapell Indus.*

  (1987) 43 Cal. 3d 1247 ........................................................................ 19

*Snowney v. Harrah's Entm't, Inc.*

  (2005) 35 Cal. 4th 1054 ....................................................................... 19

*Teselle v. McLoughlin*

  (2009) 173 Cal. App. 4th 156 ............................................................. 18

*Ventura County Nat'l Bank v. Macker*

  (1996) 49 Cal.App.4th 1528 ............................................................... 10

*West v. JPMorgan Chase Bank, N.A.*

  (2013) 214 Cal.App.4th 780 .............................................. 6, 9, 11, 13, 14

## **Federal Authorities**

*Alvarez v. Hill*

  518 F. 3d 1152, 1157 (9thCir.2008) ..................................................... 4

*Ansanelli v. JP Morgan Chase Bank, N.A.,*

  2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) ................................... 15

*Ashcroft v. Iqbal,*

  556 U.S. 662, 663 (2009) ...................................................................... 4

*Balistreri v. Pacifica Police Dep't,*

   901 F. 2d 696, 699 (9th Cir. 1990) ................................................................ 4

*Corvello v. Wells Fargo Bank, N.A.,*

   728 F.3d 878, 883 (9th Cir. 2013) .............................................................. 13

*Erickson v. Pardus*

   551 U.S. 89, 94 (2007) ................................................................................. 4

*Shapouri v. CitiMortgage, Inc.,*

   2012 U.S.Dist. LEXIS 152314 *11 (S.D.Cal. 2012) ................................. 18

*Silvas v. E\*Trade Mortgage Corp.,*

   514 F. 3d 1001, 1003-1004 (9thCir. 2008) ................................................. 4

*Wigod v. Wells Fargo Bank, N.A.,*

   673 F.3d 547, 563 (7th Cir. 2012) ....................................................... 14, 15

### California Statutes

Cal Civ. Code §2924(a)(3) ............................................................................. 5

Cal Code Civ. Proc. §339 ........................................................................ 10, 11

Cal. Bus. & Prof. Code § 17200 ................................................................ 1, 15

Cal. Civ. Code §1605 .................................................................................. 14

Cal. Civ. Code §1709 .................................................................................. 16

### Federal Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1, 4

Federal Rule of Civil Procedure 8(e) ............................................................ 4

### Treatises

5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §819 at p.236 .............. 18

## I.        Introduction

Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) should be overruled because, as demonstrated in their First Amended Complaint (hereinafter "FAC"), Plaintiffs have alleged sufficient facts against Defendant to constitute Causes of Action for: (1) Intentional and (2) Negligent Misrepresentation; (3) Promissory Estoppel; (4) Breach of Contract; (5) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et *seq*. ("UCL"); (6) Equitable Accounting; and (7) Unjust Enrichment.

In the alternative and in the event that the Court sustains Defendant's Motion to Dismiss in any respect, Plaintiffs respectfully request leave to amend the FAC so Plaintiffs may allege additional facts that would cure any deficiencies this Court identifies.

## II.        Factual Background

In or about September 2008, Plaintiffs were having financial difficulties.  The interest rate on their five year adjustable mortgage was set to increase dramatically, and they knew that that they would not be able to make their monthly payments going forward. Plaintiffs contacted the servicer of their loan, now Defendant JPMorgan Chase Bank, N.A. to ask about being reviewed for a loan modification.  (FAC, ¶¶11-13.)  After answering a few question, a representative for Defendant told Plaintiffs that they "should easily qualify for a modification." (FAC, ¶14.)  Plaintiffs explained to the same representative that as they had equity in the Subject Property, they were planning to sell, but they were assured by the agent that there was no need to sell. (FAC, ¶15.)  Plaintiffs began the modification process in or about October 2008, compiling all requested documents and sending them to Defendant for review.  However, Plaintiffs did not receive word from Defendant after two months, so in or about early December 2008, they contacted Defendant to check on the status of their modification. (FAC, ¶¶16-17.)  An agent for Defendant told Plaintiffs that their documents had been lost.  Moreover, the agent explained to Plaintiffs that Plaintiffs would never receive a modification if they continued to make monthly payments and that Plaintiffs should not make their January 2009 payment in order to "get [Defendant's] attention and help speed up the modification process."  In reliance on that representation, Plaintiffs did not immediately make their January 2009 payment. (FAC, ¶18.)

Plaintiffs, however, after initially missing their January 2009 payment date received a call from Defendant informing them that they were late.  Despite Plaintiffs' efforts to explain that they were told to miss the payment, Defendant's agent told them to borrow money from family to make the payment, which they did, on January 3, 2009. (FAC, ¶¶19-22.)  However, in February 2009, when Plaintiffs tried to make their payment, another agent told them it would not be accepted because, as the new agent explained, "it was normal" for Defendant to require modification applicants to miss payments. (FAC, ¶23.)  Later that month, an agent for Defendants told Plaintiffs to cease paying their debt while the modification process was ongoing. (FAC, ¶24.)  In reliance on these statements, Plaintiffs did not pay Defendant for three months, though they contacted Defendant every week to make sure they would not suffer any negative consequences for missing their payments.  They were assured there would be no penalties. (FAC, ¶27.)  During that period, Plaintiffs were asked to send in more documents to facilitate the modification process.  When Plaintiffs explained that they had already sent in the requested documents, an agent for Defendant explained that the documents had been lost.  Plaintiffs faxed and sent in all documents again via fax and first class mail. (FAC, ¶¶25-26.)

In or about May 2009, Plaintiffs were contacted by an agent for Defendant who informed them that they had been approved for a loan modification, and the modified payment would be $1,394.00 per month instead of the normal $2,890.39 per month.  Plaintiffs were assured the final papers would be sent to them for their signatures via Federal Express.  (FAC, ¶28.)  Soon thereafter, Chris Burnett, an agent of Defendant's loss Mitigation Department, wrote Plaintiffs a letter stating that they were approved for a Trial Payment Plan, and that if they complied with the terms of the plan, they would be considered for a permanent modification.  Plaintiffs were sent a written agreement to sign and return.  Plaintiffs did as instructed.  (FAC, ¶¶31-32.)  In or about early June 2009, Plaintiffs had not received word as to their modification options and so they contacted Defendant.  An agent for Defendant told Plaintiffs that Defendant had adopted a three-month TPP policy because previous homeowners who had received modifications were having problems making even modified payments, but that if Plaintiffs timely made all three modified payments, they would receive final modification papers by the end of September 2009. (FAC,

¶33.)  Plaintiffs made all three payments of $1,394.00 on time as instructed, and even made a fourth payment in September 2009 of $1,394.00 when they received a letter in early September 2009 informing them to do so until final paperwork on the modification was complete.  By October 2009, Plaintiffs still did not receive final paperwork on the modification and made a fifth modified payment, as instructed the previous month.  (FAC, ¶¶34-35.)  Plaintiffs contacted Defendant in October 2009 to inquire as to the status of their final modification since they had fully complied with the TPP.  They then received a phone call from an agent of Defendant claiming to be an assistant to the underwriter for Defendant's Loss Mitigation Department who informed Plaintiffs that Defendant needed additional paperwork.  (FAC, ¶¶35-36.)  Plaintiffs explained to this assistant to the underwriter that they had sent in all required documentation already, at which time Defendant's agent admitted that ***Defendant had lost Plaintiff's file*** and that Plaintiffs would have to send in new documentation immediately.  (FAC, ¶37.)  However, the same agent assured Plaintiffs that their modification was complete and that the new documentation was only required to determine interest and any reduction in principal, and that the modification would be completed in a week.  (FAC, ¶¶38-39.)

On or about October 30, 2009, Plaintiff Robert Ferguson returned home to find a man standing on the bumper of Plaintiffs' car, attempting to look into Plaintiffs' garage.  Plaintiff Robert Ferguson asked the man what he was doing and the man informed him that he was an agent for Defendant.  Plaintiff asked the man to leave and the man threw a piece of paper over Plaintiffs' fence and drove away.  (FAC, ¶41.)  Plaintiffs inspected the paper and saw an instruction to call a toll-free number.  When Plaintiffs called the number, they were informed that their modification had been denied.  (FAC, ¶42.)  Plaintiff called Defendant's Loss mitigation department to see if this was an error, but the denial was confirmed.  Plaintiffs were instructed to continue making the modified payments of $1,394.00 while other solutions were investigated.  Plaintiffs reapplied for a modification in or about January 2010.  (FAC, ¶¶43-45.)

In or about February 2010, Plaintiffs learned for the first time that Defendants had begun foreclosure proceedings. Rather than allow Defendant to foreclose, Plaintiffs put the Subject Property on the market in or about March 2010, as Plaintiffs still had some equity left in the

property.  (FAC, ¶¶46-47.)  In or about May 2010, Defendant finally recorded a Notice of Default with the Contra Costa County Recorder.  (Defendant's RJN, **Ex. 5**.)  However, during the months that the Subject Property was on the market, Plaintiffs continued to work with Defendant on a modification, and were still waiting to hear from Defendant about their most recent modification attempt when the house finally sold on or about July 8, 2010.  (FAC, ¶48.)

### III.   <u>Argument</u>

#### a.   **Standard of Review**

Federal Court pleadings "must be liberally construed so as to do justice." Federal Rule of Civil Procedure 8(e). A complaint is sufficient if it gives the defendant "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating the sufficiency of the pleading, allegations of fact are assumed to be true and are construed in the light most favorable to the pleader. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortgage Corp.*, 514 F. 3d 1001, 1003-1004 (9thCir. 2008). A claim is sufficient and facially plausible when the facts alleged allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).  A plaintiff need not allege the theory or statutory basis upon which his claims for relief are predicated. *Alvarez v. Hill* 518 F. 3d 1152, 1157 (9thCir.2008).  A court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F. 2d 696, 699 (9th Cir. 1990) .

Under the applicable legal standards, Plaintiffs state claims for the causes of action set forth in their operative FAC.

#### b.   **Plaintiffs' Claims Are Not Time-Barred**

Defendant first argues that several of Plaintiffs' claims are time-barred; specifically Plaintiffs' First and Second Causes of Action for Intentional and Negligent Misrepresentation, their Third Cause of Action for Promissory Estoppel, their Fifth Cause of Action for violations of Cal. Bus. & Prof. Code §17200, et seq., and Plaintiffs' Seventh Cause of Action for Unjust

Enrichment.  Since Defendant's argument with respect to the running of the relevant statutes of limitations as to each cause of action is based on the same incorrect assumption, Plaintiffs will address the argument first.

In their FAC, Plaintiffs state that in or about early February 2010, they learned for the first time that Defendant had begun he foreclosure process.  It is on this basis alone that Defendant claims that all statutes of limitations began to run in early February 2010.  As such, Defendant argues, since the Complaint was originally filed on July 5, 2013, all causes of action with statutes of limitations of three years or fewer are time-barred.  This argument fails for numerous reasons.

First, Defendant's own Request for Judicial Notice introduces as an exhibit (Ex. 5) the first recorded Notice of Default: May 13, 2010.  As such, even though the FAC states that Plaintiffs had learned the foreclosure process had "begun" in February 2010, Defendant's own documents prove it had not actually *legally* begun until May 2010.[1]  Second, the FAC does not specify what constituted "beginning" the foreclosure process.  All Plaintiffs allege is that they were told that "preforeclosure documentation was already in the process of being filed." (FAC, ¶46.)  Defendant makes the leap in logic, *and without authority*, that because Plaintiffs "learned" the process had begun, they had knowledge of their potential claims.  Fatal to Defendant's argument here is the fact that even though Plaintiffs had received the indication from Defendant that Defendant was going to begin foreclosure proceedings, Plaintiffs causes of action had still not accrued as they had not suffered the last of their damages: the loss of equity as a result of waiting to sell the Subject Property in reliance on Defendant's fraudulent attempt to keep them in the modification process.

Finally, Plaintiffs' FAC specifically states that even after learning that Defendant intended to move forward with foreclosure proceedings, Plaintiffs and Defendant continued to work on a modification, and that when the house sold on July 8, 2010, Plaintiffs were still waiting to hear from Defendant on their latest attempt at a modification. (FAC, ¶¶46, 48.)  In

---

[1]  Crucial to this analysis is that Cal Civ. Code §2924(a)(3) which states that a Notice of Trustee's Sale may not be recorded until 90 days after the recording of the Notice of Default.  As the Notice of Default was recorded in May of 2010, Defendant could not even have recorded a Notice of Trustee's Sale when Plaintiffs sold the Subject Property.

fact, until the date of the sale, none of their damages had accrued as there was still hope that the modification process might succeed.  As such, Defendant's argument that most of the claims in the FAC are time-barred fails.

### c.      Plaintiffs Sufficiently Plead Intentional and Negligent Misrepresentation

First, Defendant states that Plaintiffs do not plead with the requisite particularity when they allege misrepresentations were made by "SERVICER'S agents" (MtD, 5:18-20.)  However, that is the extent of Defendant's position on the specificity requirement.  Defendant never explains how Plaintiffs fail to show facts as to those requirements, which Plaintiffs actually do throughout each and every allegation of Misrepresentation in the First Cause of Action.  With respect to the "who" in the equation, Plaintiffs allege the following:

> 55.      Though Plaintiffs allege the names of employees/agents/representatives throughout this cause of action when they are aware of any particular person's name, Plaintiffs are informed and believe and thereon allege that Defendants are in the best position to know the precise names of their own agents/employees and representatives who were in contact with Plaintiffs over the relevant time period discussed herein and who made false and/or misleading statements to Plaintiffs. Additionally, Plaintiffs are informed and believe and thereon allege that Defendants are in possession of recorded telephone conversations between SERVICER and Plaintiffs that will indicate the names of SERVICER'S agents who made misrepresentations when they are able to attain copies of those recorded phone conversations currently in SERVICER'S possession.

(FAC, ¶55.)  Where the identities of speakers alleged to have made material misrepresentations is unknown, but discoverable, such an allegation is sufficient.  The Court in *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793-94, held that where the identities of speakers who spoke with the Plaintiff (or who wrote to the Plaintiff) were within the knowledge of the bank, she should not have to plead that information. (See also *Comm. On Children's Television, Inc. v. Gen. Foods Corp.* (1983) 35 Cal. 3d 197, 217 (superseded by statute on other grounds), holding that "[l]ess specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy'.")  As such, Plaintiffs sufficiently plead that Defendant is in a better position to know the identities of those agents who spoke with Plaintiffs and who sent them letters.

Next, Defendant argues that Plaintiffs' reliance cannot be reasonable because all promises needed to be in writing.  Here, Defendant conflates a defense against a contract cause of action with a defense against the reasonableness of the reliance in a fraud cause of action. There are three problems with this argument.  First, it assumes that the thrust of each allegation of misrepresentation (of which there are TEN) is contract-based.  This is not so.  Second, solely with respect to the issue of fraud, whether there was an actual contract formed by the verbal statements Defendant's agents made is irrelevant when discussing the intent to induce Plaintiffs' action or reliance.  Third, unless "reasonable minds can come to only one conclusion based on the facts" (*Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843) "the question of whether a plaintiff's reliance is reasonable is a question of fact." (*Blankenheim v. E.F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475; see also *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503: "Whether reliance is justified is a question of fact for the determination of the trial court; the issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience.")

Next, Defendants argue that there is no nexus" between the misrepresentations made and the resulting damages because Plaintiffs were still required to make their payments under the Subject Loan, and that Plaintiffs simply have no room to complain because between the time they began the modification process and the time they chose to sell their home, they were able to live in the Subject Property for almost two years making lower payments.  Defendant artfully attempts, without success, to retell the story alleged in the Complaint.  However, the damage "nexus" starts at the very beginning.

In *Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, the homeowner who was in a Chapter 7 bankruptcy and who was planning to convert it to a Chapter 13, was told by her Servicer that if she dropped the bankruptcy altogether, the bank would work with her on a mortgage reinstatement and loan modification. (*Id.* at 223.)  The bank then moved the Bankruptcy Court to lift the stay.  In reliance on the promise to work with her on a loan modification, Aceves did not oppose the motion. Shortly thereafter, the bank began foreclosure proceedings, scheduling her home for public auction. In the interim, Aceves attempted to get the

Bank to work with her on a modification, but the Bank would not do so, and sold the property. (*Ibid.*)  First, the *Aceves* Court held that:

> We conclude Aceves reasonably relied on U.S. Bank's promise; U.S. Bank reasonably expected her to so rely; and it was foreseeable she would do so. U.S. Bank promised to work with Aceves to reinstate and *modify* the loan. That would have been more beneficial to Aceves than the relief she could have obtained under chapter 13. The bankruptcy court could have reinstated the loan—permitted Aceves to cure the default, pay the arrearages, and resume regular loan payments—but it could not have *modified* the terms of the loan, for example, by reducing the amount of the regular monthly payments or extending the life of the loan. (citations.) By promising to work with Aceves to *modify* the loan in addition to reinstating it, U.S. Bank presented Aceves with a compelling reason to opt for negotiations with the bank instead of seeking bankruptcy relief.

(*Id.* at 227-28.)  The Court ultimately held that "U.S. Bank never intended to work with Aceves to reinstate and modify the loan. The bank so promised only to convince Aceves to forgo further bankruptcy proceedings, thereby permitting the bank to lift the automatic stay and foreclose on the property. (*Id.* at 224.)[2]

Plaintiffs allege that as their payments were ***about*** to go up, the contacted Defendant to see if a modification was a viable alternative to selling the Subject Property (FAC, ¶¶13-15.) Plaintiffs specifically allege that they informed Defendant's agents that they were planning to sell the Subject Property as they had adequate equity (approximately $200,000) but that Defendant's agent specifically implored them to work on a modification instead because Plaintiffs "should easily qualify for a modification." (FAC, ¶¶14-15.)  The Court need look no further than this fact for Defendant's "nexus." Moreover, Plaintiffs allege throughout the FAC that in addition to what they ultimately lost (equity), they expended time and money on the modification process, which Defendant never intended to complete. (FAC, ¶71.)  As the Court held in *Bushell v. JPMorgan Chase, N.A.* (2013) 220 Cal.App.4th 915, 928, 930, 931, time spent

---

[2]  Although the Court's analysis primarily focused on the elements for Promissory Estoppel, it made sure to add at the end of its opinion that "[t]he elements of fraud are similar to the elements of promissory estoppel, with the additional requirements that a false promise be made and that the promisor know of the falsity when making the promise. (See *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 792–794 [discussing elements of fraud].) Aceves has adequately alleged those facts." (*Id.* at 231.)

repeatedly contacting a servicer and repeatedly preparing documents at a servicer's requests constitute damages sounding in both contract **and** fraud.[3]

The foregoing constituted the extent of Defendant's argument as to two related **but distinct** causes of action.  The problem for Defendant therefore is that Plaintiffs, in their cause of action for **_Intentional_** Misrepresentation, allege ten independently actionable instances of misrepresentation, each of which pleads all the elements of fraud.  Defendant's Motion to Dismiss as to the first cause of action does not specify to **which** of the ten allegations its arguments apply. (FAC, ¶70)  Moreover, assuming *arguendo* the Defendant's argument regarding the lack of specificity in naming particular people who made misrepresentations is correct (and *West, supra*, says it is not), under their "Misrepresentation #5" (FAC, ¶64), Plaintiffs specifically allege that Chris Burnett, as one of Defendant's agents in its Loss Mitigation Department, sent Plaintiffs a letter stating that they had been approved for a TPP and that a modification would follow completion of all TPP requirements.  Following this allegation are the necessary elements for a fraud cause of action.  Even if every other allegation of fraud fails (which Plaintiffs certainly do not concede), this allegation should survive dismissal, which means that the entire cause of action survives dismissal.  As a demurrer cannot strike portions of a cause of action, the entire cause of action must withstand the demurrer (See *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal. App. 4th 1028, 1047, 134 ("a demurrer cannot rightfully be sustained to part of a cause of action or to a particular type of damage or remedy"); see also *PH II, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 1680, 1682 ("[a] demurrer does not lie to a portion of a cause of action.")[4]  Plaintiffs specifically plead that each of the ten instances of misrepresentation, as well as SERVICER'S endless document requests, are "independently actionable."  (FAC, ¶70) Plaintiffs set forth facts under each element of Intentional Misrepresentation to support the claims made in each instance of actionable misrepresentation.

---

[3] In reaching this conclusion, the *Bushell* Court specifically rejected JPMorgan Chase's argument that there could be no damages because Plaintiffs were required to make their payments anyway.

[4]  Plaintiffs certainly do not concede that Misrepresentations 1-4 and 6-10 are lost.  Plaintiffs only argue this point to highlight for the Court that this misrepresentation was essentially conceded.

---

Finally, the only argument made against Plaintiff's Second Cause of Action for Negligent Misrepresentation is that it is time-barred, with nothing further. (MtD, 3:23-25.) Defendants appear to merge the two for all other analytical purposes.  However, the two causes of action are analytically different.  First, Plaintiffs disagree that the statute of limitations on a claim for negligent misrepresentation ***sounding in fraud*** is two years.  Although Defendant only cites to Cal. Code Civ. Proc. §339 for the proposition that the statute of limitations is two years on a cause of action for negligent misrepresentation, Plaintiffs suspect that Defendant would also cite to *Ventura County Nat'l Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1531 (hereinafter "*Macker*") for the proposition that the applicable statute of limitations on a claim for Negligent Misrepresentation is 2 years, rendering any allegations prior to July 5, 2011 time-barred.[5] However, *Macker* is inapposite in this instance.  In *Macker*, the basis for the Complaint was professional negligence.  The underlying conduct sounded in negligence, so the Court was unwilling to allow Plaintiff to bootstrap a fraud claim to the Complaint by pleading negligent misrepresentation (which had ***as its basis*** purely negligent conduct) in order to receive the protection of the three year statute of limitations for fraud.  Plaintiffs would agree that where all allegations point to ***purely*** negligent conduct, then negligent misrepresentation cannot be viewed as a species of fraud for the purposes of getting around the statute of limitations for negligence.

However, the instant case is more like *Broberg v. Guardian Life Ins. Co. of Am.* (2009) 171 Cal. App. 4th 912. ("*Broberg*")  In *Broberg*, the Plaintiff alleged fraud and negligent misrepresentation, as well as various statutory violations against his insurer.  The crux of the allegations was that the insurer used false and misleading marketing materials to induce the Plaintiff into purchasing its policy, and the Plaintiff only discovered the inherently false nature of those materials 11 years later.  The Court held that "[t]he limitations period for Powell's fraud and negligent misrepresentation claims is three years." (*Id*. at 920.)  Although the Court did not delve into a deep discussion about the applicable statute of limitations, the distinction should be clear: where the allegations on a negligent misrepresentation claim revolve around fraudulent activity, then the statute of limitations is three years.  Where it centers on purely negligent

---

[5] Defendants also cite to Cal. Code. Civ. Proc. §335.1, but that statute is entirely inapplicable here.

conduct, the statute of limitations is two years.  In their FAC, Plaintiffs allege that that Defendant's agents had no reasonable basis upon which to believe their statements were true (FAC, ¶77) and that the entire endeavor was part of the scheme to keep Plaintiffs in the modification process for as long as possible before foreclosing on the Subject Property.  (FAC, ¶70.)  As such, Plaintiffs sufficiently tie the misrepresentations (even if negligently made *__without concern for the truth__*) to the overall scheme to defraud Plaintiffs by keeping them in the modification process for as long as possible in order to collect more in fees and penalties. Therefore, under *Broberg*, the relevant statute of limitations is three years.

Plaintiffs therefore ask this Court to overrule Defendant's Motion to Dismiss as to the First Cause of Action for Intentional Misrepresentation and the Motion to Dismiss (such as it is) as to the Second Cause of Action for Negligent Misrepresentation.

### d.        Plaintiffs Sufficiently Plead Promissory Estoppel

Defendant argues that Plaintiffs fail to plead the requisite elements for Promissory Estoppel.[6]  Again, purely as a matter of form, this is untrue.  Plaintiffs specifically plead each and every element of Promissory Estoppel.  In fact, the terms of the promise are clearly set forth in the FAC (¶83.)  Plaintiffs allege that in exchange for Plaintiffs making modified (timely) payments of $1,394.00 per month for three months under the TPP, the modification would be made permanent.  Plaintiff made all three payments on time and there was no change in their financial status. (¶85.) The reliance was actual, justifiable and detrimental because Plaintiffs spent time and money sending Defendants documents to which Defendant was not otherwise entitled and because in reliance on the promise, Plaintiffs did not sell the Subject Property at an earlier time when they enjoyed a higher level of equity in the Subject Property. (¶¶86-87; see also *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at 803.)

Defendant first argues that Plaintiffs cause of action for Promissory Estoppel fails because any agreement to modify the Subject Loan must be in writing or else it fails under a

---

[6] As an initial matter, Plaintiffs only allege Promissory Estoppel in the alternative if, in the future, consideration is found to be lacking, although the authorities are clear, *infra*, that with respect to a TPP, it is not.  The Promissory Estoppel Cause of Action is meant to mirror the Breach of Contract allegations entirely, but for the consideration issue.  As such, Defendant's earlier argument that under Cal Code Civ. Proc. §339, the statute of limitations is 2 years is simply incorrect.  The basis for the Cause of Action is on the written promises inherent in the TPP, and therefore, the statute of limitations is four years.

Statute of Frauds analysis.  This is certainly true.  Unfortunately for Defendant, that argument has nothing to do with the claims made in the FAC.  Of course any eventual permanent modification would necessarily require a written Agreement, but that has no impact on the promises inherent in the Written TPP, which Plaintiffs signed and sent to Defendant.  However, Defendant next argues that the TPP needed to be in writing.  Plaintiffs specifically pleaded that the TPP was in writing, that they signed the TPP, and sent it to Defendant. (FAC, ¶83.)  In fact, Defendant's argument actually works against Defendant because to the extent that any promises were made knowing that their enforcement might eventually fail under a Statute of Frauds defense, Defendant would then be liable under a false promise theory. (See *Bushell v. JPMorgan Chase Bank, N.A.*, *supra*, 220 Cal.App.4th at 930-931.)  Plaintiffs could certainly amend the Complaint to include such a Cause of Action in the future.

Next, Defendant argues that Plaintiffs fail to plead "a single term of any alleged promise or agreement they received from [Defendant]" and that the promise was entirely too vague to constitute an actionable promise. (MtD, 7:21-24.)  However, Defendant never asserts what is insufficient about what was actually pleaded.  What was actually pleaded was the following:

> 83.   **Promise**: In or about May 2009, SERVICER, by and through its agent/employee/representative, informed Plaintiffs that their modification had been completed, specifically stating terms and monthly payment amounts,  and noting that final paperwork would be sent to Plaintiffs for their signatures. Additionally, in or about June 2009, Plaintiffs contacted SERVICER regarding the status of their modification and were told that **they were being placed into a Trial Payment Program (TPP) and were clearly and unambiguously promised that if they made three consecutive monthly TPP payments of $1,394.00, their modification would become permanent.**   In or about September 2009, SERVICER sent Plaintiffs confirmation in writing that they should continue making TPP payments of $1,394.00.

(FAC, ¶83, emphasis added.)   Recall that in *Aceves*, *supra*, 192 Cal.App.4th at 223, the Court found that simply the promise made by U.S. Bank to work with the homeowner was sufficiently specific to make out a cause of action for Promissory Estoppel.  Here, Plaintiffs plead actual terms of the TPP ($1,394.00 per month for three months) and the result (a permanent

modification.)  Plaintiffs fail to see what is ambiguous here, and Defendant certainly never sheds light on what is unclear, conditional or ambiguous about the alleged promise.[7]

Next, Defendant argues around the plain language of FAC, ¶83 by stating that there is no indication in the pleading that there is a clear promise to permanently modify the Subject Loan. This is clearly refuted by the above citation to the FAC.

Finally, Defendant again resorts to a damage defense: Plaintiffs got to live in their home for over a year and a half while only making "partial or no payments" on their loan obligations. This fails to consider all of the allegations (to which Plaintiffs have already referred) that Plaintiffs were ready, willing and able to sell their home from the outset of the modification process but were induced to forego a sale in order to obtain a modification that would allow them to continue living in their home. (FAC, ¶87.)  Defendant argues that nothing precluded Plaintiffs from selling their home at an earlier time.  While this may be true, this argument fails when taking into account the lengths to which Defendant went to persuade Plaintiffs not to sell.  The promise alleged in the Third Cause of Action sufficiently describes those lengths.  At the very least, as described above, whether or not the reliance on the promise was reasonable is a question of fact, inappropriate at the demurrer stage. (*Gray v. Don Miller & Associates, Inc.*, *supra*, 35 Cal.3d at 503.)

The Motion to Dismiss as the Third Cause of Action for Promissory Estoppel should be overruled.

**e.      Plaintiffs Sufficiently Plead Breach of Contract**

Defendant makes several arguments against Plaintiffs' Fourth Cause of Action for Breach of Contract.  First, Defendant argues that since Plaintiffs do not provide the TPP, no contract exists.  However, a TPP or permanent modification does not fail simply because the Bank or Servicer fails to send the homeowner a signed copy of the Agreement.  (See *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 883 (9th Cir. 2013), as amended on reh'g in part; see also

---

[7] To the extent that Defendant JPMorgan Chase is implicitly arguing that TPPs will always fail, Plaintiffs would refer this Court to the holdings in *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at 804 and *Bushell v. JPMorgan Chase Bank, N.A.*, *supra*, 220 Cal.App.4th at 930, for the idea that TPPs are a proper basis for the promise element in a Promissory Estoppel cause of action.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 563 (7th Cir. 2012), in which the court refused to invalidate a TPP for Wells Fargo's failure to use its "unbridled discretion to put a Modification Agreement in the mail.")  The FAC clearly alleges that the Contract was in writing and clearly alleges the terms of the Contract:

> 91.   **Contract**: Plaintiff and SERVICER entered into the TPP which was executed by both parties in or about June 2009. The terms of the TPP were that **Plaintiffs were to make timely payments of $1,394.00 on a trial basis for three consecutive months at which time their modification was to be made permanent.** As Plaintiffs were sent documents to sign and return to SERVICER, **SERVICER is in possession of the fully executed written contract and is on notice of its existence**.

(FAC, ¶91, emphasis added.) Defendant argues that the terms of the Contract are not definite enough because Defendant was only required to consider a workout solution. (MtD, 9:5-11.) However, the *Bushell* Court heard the same argument and found a definite promise because the conditional part of the promise (the homeowners' compliance with the terms of the TPP) triggered the Defendant's obligation to perform. (See *Bushell v. JPMorgan Chase Bank, N.A.*, *supra*, 220 Cal.App.4th at 927-928.)[8]

TPPs have been recognized as binding written contracts.  In *West v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at 796-798, the court held that where a borrower fully complies with a HAMP TPP, a servicer must offer a permanent loan modification.  In the case at bar, Plaintiffs sufficiently pleaded that they complied with the terms of the TPP, not only for *three* months but for *five* months, until Defendant wrongfully and fraudulently denied them a permanent modification.

Finally, Defendant argues that the Fourth Cause of Action for Breach of Contract fails for lack of consideration because the unilateral agreement to allow Plaintiffs to pay less than what they were already contractually obligated to pay cannot constitute a binding contract. (MtD, 9:22-23.)  Defendant's argument is specious.  Cal. Civ. Code §1605 defines "good consideration" as

---

[8]  The apparent incongruity between ¶31 and ¶91 (the former says "considered for a permanent workout solution" and the other says it "was to be made permanent") makes no difference in the long run because Plaintiffs met the terms of the TPP and neither event occurred.

[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

In *Ansanelli,* the Court held that:

After the parties allegedly reached an agreement that plaintiffs' loans would be permanently modified if they complied with the trial period plan, plaintiffs expended time and energy and made financial disclosures in furtherance of the agreement, which they would not have been required to do under the original contract. California law recognizes that a detriment constituting consideration includes such 'expenditure of time and energy.'

*Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011); see also *Wigod v. Wells Fargo Bank, N.A.*, *supra*, 673 F.3d at 564 holding that consideration was present simply where the TPP required the homeowner to "open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information." Here, Plaintiffs allege that in addition to the numerous documents they were required to provide Defendant in order to be considered for a loan modification, as well as the time and money spent preparing and sending those documents, Plaintiffs, who had the ability to sell the Subject Property agreed to forbear on any sale in order to work on a loan modification. (FAC, ¶71.) According to the authorities above, those actions constituted at the very least prejudice suffered by Plaintiff, and at most, a benefit conferred to Defendant. As such, consideration is sufficiently pleaded.

The Motion to Dismiss as to the Fourth Cause of Action for Breach of Contract should be overruled.

**f.      Plaintiffs Sufficiently Plead Business and Profession Code §17200 et *seq.***

Defendant next demurs to Plaintiffs' (erroneously enumerated) Sixth Cause of Action for violation of Cal. Bus. & Prof. Code §17200, et *seq.*,also referred to as California's Unfair Competition Law ("UCL").[9]  First, Defendant argues that Plaintiffs lack standing to bring a UCL claim because they have not suffered "injury in fact" nor have they pleaded "lost money or

---

[9] Plaintiffs amended the Original Complaint by removing a Cause of Action, and neglected to change the numbering.  As such, the UCL claim should be Plaintiffs' Fifth Cause of Action and their Accounting Claim should be their Sixth.  The Seventh Cause of Action for Unjust Enrichment is numbered correctly.

property".  This is simply not the case.  The entire crux of Plaintiffs' Complaint is that Defendant's scheme all along was to prolong the modification by imploring Plaintiffs to continue making modified payments while Defendant all the while collected unwarranted fees and penalties until the time was ripe to wrongfully foreclose on the Subject Property.  Plaintiffs have *in fact* lost money and property by engaging in Defendant's fraudulent scheme because they were induced to enter into the modification process when Defendant had no intention of granting them a permanent modification, and chose to not sell the Subject Property in 2008 in reliance on the promise to modify the Subject Loan.  Additionally, as alleged above, Plaintiff spent money while engaged in the modification process.  Plaintiffs have sufficiently pleaded their standing to allege a UCL claim.

It should first be noted that Plaintiffs allege a violation of Cal. Civ. Code §1709, which prohibits fraud.  Plaintiffs incorporated all previous allegations into their Cause of Action for UCL violations. (FAC, ¶95)  As Plaintiffs allege fraud more fully in their first and second causes of action, and properly allege the economic damages incurred as a result of Defendants' fraud, Plaintiffs properly meet the pleading standard for unlawfulness. Moreover, §17200 functions in the disjunctive, which means that a properly pleaded claim for unlawfulness is *sufficient* for a claim under the UCL.   Plaintiffs agree that as a predicate statutory violation, an insufficiency in pleading in their First and Second Causes of Action would necessarily impact the UCL claim, but only under the "unlawful" prong, since the statute functions in the disjunctive.  However, as Plaintiffs have sufficiently pleaded Intentional and Negligent Misrepresentation, they have satisfied the unlawfulness prong of the UCL.

Plaintiffs likewise alleged that the totality of Defendant's conduct constituted unfair business practices in violation of the statute.  Plaintiffs allege (FAC, ¶98) that the totality of the conduct that was unfair: that Defendant encouraged Plaintiffs, who had substantial equity in the Subject Property, to instead enter into the modification process when Defendant had no intention of ever granting them a modification; that Defendant unnecessarily prolonged the process by demanding Plaintiffs resend documents that Defendant's agents admitted Defendant had lost, all as a means of collecting unwarranted fees and penalties, which necessarily had the effect of

decreasing Plaintiffs' equity interest in the Subject Property; that Defendant put Plaintiffs into a TPP that by its terms was to last for three months, but that Defendants required Plaintiffs, who had fully performed on the TPP, to continue to make modified payments without the promised permanent modification, only to renege on the promise and deny the modification; and that Defendant, after breaching the agreement and denying the promised permanent modification, then implored Plaintiffs to continue making modified payments without informing Plaintiffs that paying the lower amount would allow Defendant to continue to collect late fees and penalties. Defendant never refutes this, nor can it: unfairness is a matter for the trier of fact. (See *People v. McKale* (1979) 25 Cal. 3d 626, 635: "What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact . . . the essential test being whether the public is likely to be deceived . . . "; see also *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134–135: "Whether a practice is ... unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.")[10]

      With respect to the "fraudulent" prong of the UCL, Defendant correctly states the law. However, Defendant's argument is also improper at the demurrer stage.  As the court stated in *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471, "[w]hether a practice is deceptive or fraudulent 'cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer.' [Citation.] Rather, the determination is one question of fact, requiring consideration and weighing of evidence from both sides before it can be resolved."  Here, Plaintiffs (having incorporated by reference all previous allegations (FAC, ¶95)) allege that the totality of the alleged conduct was likely to mislead the general public.  Defendant claims that there is no link in the FAC between the conduct alleged and the alleged effect on the public.  However, Defendant's own RJN, Ex. 5 was a publicly recorded document which announced Plaintiffs' alleged default to the world, when that default only occurred as a result of Defendant's fraudulent conduct, as alleged.  Although

---

[10] Defendant's claim that the any injury Plaintiffs' sustained (approximately $120,000.00 in lost equity) is **insubstantial** is likewise inappropriate at the demurrer stage. (See *Klein v. Chevron U.S.A., Inc.*, (2012) 202 Cal. App. 4th 1342, 1376: "At the pleading stage, we cannot presume that these alleged harms are not "substantial"…" )

Plaintiffs could amend the FAC to include this allegation, the analysis under the previous two disjunctive prongs of the UCL is sufficient to overcome the Motion to Dismiss as to this Cause of Action.

Finally, Defendant argues that Plaintiffs cannot make out a Cause of Action under the UCL because damages are not available under a UCL theory.  While it is certainly true that damages are not available under a UCL claim, Plaintiffs do not seek damages but rather restitution and disgorgement. (FAC, ¶102.)  Plaintiffs allege early in the FAC that based on the Agreement that Defendant had with the purported Beneficiary to the Subject Loan, Defendant received financial incentives (in the way of fees and penalties, among other things) for Defendant to delay and ultimately deny modifications. (FAC, ¶55.)  Those benefits to Defendant were not solely losses by Plaintiffs, and therefore any independent benefit Defendant derived from its wrongful conduct should revert to Plaintiff.  Such a remedy is appropriate under the UCL. (See *Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal. App. 4th 798, 812, disapproved of on other grounds by *Kwikset Corp. v. Superior Court* (2011) 51 Cal. 4th 310.)

As such, Plaintiffs ask this Court to overrule Defendant's Motion to Dismiss as to their UCL Cause of Action.

### g.   Plaintiffs Can Maintain a Cause of Action For Equitable Accounting

First, Defendant argues that an accounting requires a fiduciary duty, citing to *Shapouri v. CitiMortgage, Inc.*, 2012 U.S.Dist. LEXIS 152314 *11 (S.D.Cal. 2012) (MtD, 13:22-23). However, a fiduciary relationship is not necessary for an Accounting, it is merely sufficient.  The Court in *Teselle*, stated that "a fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting." (*Teselle v. McLoughlin* (2009) 173 Cal. App. 4th 156, 179; see also 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §819 at p.236, noting that a Plaintiff may bring a claim for an accounting "(1) where a fiduciary relationship exists between the parties, ___*or*___ (2) where…the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.")

Defendant argues that Plaintiffs admit that they are in debt.  Defendant misunderstands the thrust of Plaintiffs' cause of action here.  Paragraph 105 of the FAC states that "[t]he entire indebtedness including the exact entity to which Plaintiffs are in debt, *if Plaintiffs are in debt at all*, is in dispute and in question."  (emphasis added.)  This is hardly an admission of debt, and such an admission would make no sense since Plaintiffs sold the Subject Property and are no longer indebted to Defendant at all.  Plaintiffs allege throughout their FAC (and incorporate such allegations in to the Sixth Cause of Action for Equitable Accounting (FAC, ¶103)) that Defendant collected unwarranted fees and penalties as a result of its fraudulent and wrongful conduct in keeping Plaintiffs in a long, drawn-out modification process that Defendant never intended to complete.  Moreover, Plaintiffs allege that Defendant received incentives from its Agreement with the purported beneficiary of the Subject Loan to delay and then deny the modification.  As only Defendant knows the degree to which it benefitted by its wrongful conduct, an accounting is necessary.  To the extent that any of the foregoing facts are not in the FAC, Plaintiffs can amend to include them.

The Motion to Dismiss as to the Sixth Cause of Action for Equitable Accounting should be overruled.

### h.   Plaintiffs Can Maintain a Cause of Action For Unjust Enrichment

With respect to Plaintiffs' Seventh Cause of Action for Unjust Enrichment, Defendant makes two arguments.  First, Defendant argues that Unjust Enrichment is not a cause of action, and cites to two authorities for that proposition.  In response, Plaintiff merely refers the Court to California Supreme Court decisions that either explicitly or implicitly recognize Unjust Enrichment as a cause of action. (*Huskinson & Brown, LLP v. Wolf* (2004) 32 Cal. 4th 453, 457; *Ghirardo v. Antonioli* (1996) 14 Cal. 4th 39, 52;  *Snowney v. Harrah's Entm't, Inc.* (2005) 35 Cal. 4th 1054, 1068; *Phillippe v. Shapell Indus.* (1987) 43 Cal. 3d 1247, 1263.)

Defendant's second argument is that the existence of an enforceable contract precludes recovery for unjust enrichment.  That argument is completely inapplicable here where the basis of the unjust enrichment claim is the sums of money by which Defendant enriched itself at Plaintiffs' expense: namely the fees and penalties it accrued as a result of keeping Plaintiffs  in

the modification process for as long as possible before attempting to foreclose.  Plaintiffs specifically plead in their FAC:

> 110.    SERVICER received a benefit from Plaintiffs by their participation in the modification process.  Plaintiffs engaged in the process without knowledge that SERVICER had no intention of granting them a modification.   The benefit conferred upon SERVICER was direct in that SERVICER could not, under its Pooling and Servicing Agreement with the BENEFICIARY of the Subject Loan, collect the fees and penalties it collected without Plaintiff's participation in the modification process.  Moreover, those fees and penalties were accounted for when the Subject Property was sold, thereby decreasing the amount Plaintiffs could recover from the sale of the Subject Property.

(FAC, ¶110) That satisfies the first element of Unjust Enrichment.  The second element of Unjust Enrichment is satisfied in the next paragraph:

> 111.    It would be unjust for SERVICER to retain the benefits of Plaintiffs' participation in the modification process because their participation was premised on the belief that SERVICER would consider them modification application in good faith.   However, as alleged above, SERVICER only engaged in the modification process with Plaintiffs in order to collect fees and penalties. Therefore, as between Plaintiffs and SERVICER, it would be unjust for SERVICER to retain the benefit conferred upon it by Plaintiffs.

(FAC, ¶111.)  The elements of Unjust Enrichment are met, and the Motion to Dismiss as to the Seventh Cause of Action should be overruled.

## IV.    Conclusion

Plaintiffs have sufficiently pleaded their seven Causes of Action and Defendant's Motion to Dismiss should be overruled as to each Cause of Action in Plaintiffs' FAC.  However, Plaintiffs again pray, in the event this Court finds any or all Causes of Action lacking specific facts, that they be granted leave to amend their Complaint for the first time in order to allege further facts that might cure any deficiencies this Court may find.

DATED:  March 14, 2014                    UNITED LAW CENTER
                                          A Professional Law Corporation


                                           _/S/ John S. Sargetis_____
                                          John S. Sargetis,
                                          Attorney for Plaintiffs

*Ferguson v. JP Morgan Chase Bank, N.A., et al.*
*United States District Court – Eastern District – Sacramento Division*
*CASE NO.:  2:14-cv-00328-KJM-KJN*

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 years and not a party to this action.  This **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION** filed through the ECF system was previously sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the  23rd day of September, 2013.

UNITED LAW CENTER
A Professional Law Corporation

By:    /S/ Tina Levitt_____
       Tina Levitt, Paralegal