1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT FERGUSON and                    No. 2:14-CV-00328-KJM-KJN
     NANCY FERGUSON,
12
                  Plaintiffs,
13                                            ORDER
           v.
14
     JPMORGAN CHASE BANK, N.A.,
15
                  Defendant.
16

17           This matter is before the court on the motion by defendant JPMorgan Chase Bank

18   ("Chase" or "defendant") to dismiss plaintiffs Robert and Nancy Ferguson's (collectively

19   "plaintiffs") First Amended Complaint.  (Def.'s Mot. Dismiss, ECF 4.)  Plaintiffs oppose the

20   motion.  (Pls.' Opp'n, ECF 9.)  The court decided the motion without a hearing.  As explained

21   below, defendant's motion is GRANTED in part and DENIED in part.

22   I.    BACKGROUND

23         A.    Alleged Facts

24           The claims in this case arise out of defendant's alleged failure to keep its promises

25   in connection with modification of plaintiffs' "residential mortgage loan" ("Subject Loan").

26   (Pls.' First Am. Compl. ("Compl.") ¶ 2, ECF 1-8.)  The alleged promises related to plaintiffs'

27   "residence located at 547 Freya Way, Pleasant Hills, California ("Subject Property")."  (*Id.*)

28
                                              1

1   Plaintiffs reside in Elk Grove, California.  (*Id.* ¶ 1.)  Defendant "was the Defendant of the Subject

2   Loan."  (*Id.* ¶ 3.)

3           In 2003, plaintiffs purchased the Subject Property with a "five year Adjustable

4   Rate Mortgage," and "maintained [it] as their primary . . . residence . . . ."  (ECF 1, Ex. 5

5   ¶¶ 10-11.)  The mortgage payments were set to increase in October 2008.  (*Id.* ¶ 11.)  In 2008,

6   defendant became the defendant of plaintiffs' loan.  (*Id.* ¶ 12.)

7           Because Robert lost his employment in September 2008, plaintiffs contacted

8   defendant to inquire about mortgage modification options  (*Id.* ¶ 13.)  Plaintiffs allege that a

9   representative asked them pre-qualifying questions and told them they "should easily qualify for a

10  modification."  (*Id.* ¶ 14 (internal quotation marks omitted).)  When they "explained to the

11  representative . . . that they were planning to sell their home as they had adequate equity[,]" the

12  representative responded "that there was no need to sell the Subject Property."  (*Id.* ¶ 15.)

13          In October 2008, plaintiffs "received the first modification application," and allege

14  that they sent it back to defendant on the following day.  (*Id*. ¶ 16.)  In December 2008, after two

15  months with no response, plaintiffs contacted defendant to inquire about the status of the

16  modification application.  (*Id*. ¶ 17.)  The representative informed plaintiffs that their documents

17  had been lost and explained that to be eligible for modification, plaintiffs needed to stop making

18  their mortgage payments.  (*Id.*)  Plaintiffs allege they relied on that statement and did not make

19  their January 2009 payment.  (*Id.*)

20          When defendant's collection department called plaintiffs in January 2009 to

21  inquire about the missed payment (*id*. ¶ 19), plaintiffs explained defendant had advised them to

22  stop making payments (*id*. ¶ 20).  At that time, defendant explained plaintiffs' loan was in default

23  (*id.*) and it would notify the "loss mitigation department with respect to speeding up the

24  modification process" (*id*. ¶ 21).  Plaintiffs then borrowed funds from a family member, out of

25  fear of default, and made the January 2009 payment.  (*Id*. ¶ 22.)

26          In February 2009, plaintiffs aver a representative of defendant's again advised

27  them to stop making their mortgage payments; that the payment would not be accepted; and that

28  "it was normal" not to make payments during the modification process.  (*Id*. ¶¶ 23–24.)  In

1    addition, the representative again asked for various documents, but plaintiffs explained they had

2    already provided those documents.  (*Id*. ¶ 25.)  The representative told them "the original

3    documents had been lost," so defendant needed new copies.  (*Id.*)  This time, plaintiffs faxed the

4    requested documents and also sent them by first-class mail.  (*Id*. ¶ 26.)

5            "[S]olely as a result of [defendant's] representation that payment should not be

6    made while the modification was in process," plaintiffs allege they did not make mortgage

7    payments from on or about February 2009 through on or about April 2009.  (*Id*. ¶ 27.)  Moreover,

8    they allege that they regularly contacted defendant "to ensure that non-payment would not lead to

9    any penalties or unintended interest increases," and defendant "assured" them "that non-payment

10   during the modification process was 'standard practice' and that they should not have cause for

11   worry."  (*Id.*)

12           In May 2009, a representative from defendant's Loss Mitigation Department

13   contacted plaintiffs and "informed them that their modification was complete," and that their

14   monthly payment had been reduced from $2,890.39 to $1,394.00.  (*Id*. ¶ 28.)  In the same month,

15   plaintiffs received a letter from defendant, signed by its "agent[,] Chris Burnett," of the Loss

16   Mitigation Department, indicating that plaintiffs had been approved for a Trial Plan Agreement

17   ("TPA").  (*Id*. ¶ 31.)  The letter provided "that if [plaintiffs] complied with all the terms . . . they

18   would be considered for a permanent workout solution . . ." once the trial plan was completed.

19   (*Id.*)  Plaintiffs "gathered the necessary documentation, signed the Agreement, and promptly

20   returned the requested documentation to [defendant] prior to the [June 1, 2009] deadline."  (*Id*.

21   ¶¶ 31–32.)

22           In June 2009, when plaintiffs "had still not received information," they contacted

23   defendant; a representative indicated defendant "had adopted a new policy with respect to

24   approving permanent mortgage modifications" because "many borrowers were having trouble

25   making their monthly payments."  (*Id*. ¶ 33.)  The representative "specifically stated that so long

26   as [p]laintiffs paid the quoted modified amount for three months, the modification would be made

27   permanent and final papers would be sent at the end of September 2009."  (*Id.*)  Plaintiffs allege

28   they made the three "timely payments of $1,394.00 . . . as instructed by [defendant's]

3

representatives." (*Id.* ¶ 34.) In September 2009, plaintiffs allege they "received official documentation from [defendant instructing them] to continue making payments of $1,394.00 until final paperwork was completed." (*Id.* ¶ 35.) Plaintiffs allege they made the fifth TPP payment in October 2009. (*Id.*) However, in the same month, defendant informed them that they again "had lost [p]laintiffs' file and that [p]laintiffs were required to send new documentation immediately." (*Id.* ¶¶ 36–37.) Defendant then "reassured [p]laintiffs that their modification was complete and that [defendant's] underwriter was determining the interest and reducing the principal." (*Id.* ¶ 38.) The representative also informed plaintiffs "that the modification process would be completed in a week . . . ." (*Id.* ¶ 39.) "Despite [plaintiffs'] constant contact with [defendant's] Loss Mitigation Department, in or about late October of 2009, [p]laintiffs' modification had still not been completed." (*Id.* ¶ 40.)

"On or about October 30, 2009, [p]laintiff Robert Ferguson arrived home to find a man standing on the bumper of [p]laintiffs' car attempting to view into [p]laintiffs' garage." (*Id.* ¶ 41.) The man informed him he was an agent of defendant. (*Id.*) "Plaintiff asked the man to leave [p]laintiffs' property[,] at which time the man threw a piece of paper over [p]laintiffs' fence, ran to his car, and drove away." (*Id.*) The piece of paper contained a toll-free number. (*Id.* ¶ 42.) Plaintiffs called the toll-free number on the paper, and "a representative for [defendant] informed [them] that their modification had been denied." (*Id.* ¶ 42.) The Loss Mitigation Department confirmed that denial "on or about November 2, 2009." (*Id.* ¶ 43.) Plaintiffs' attempt to explain their modification had previously been approved was unavailing. (*Id.*) However, the Loss Mitigation Department advised them to "continue making the $1,394.00 payments while [defendant] explored other programs." (*Id.* ¶ 44.)

Plaintiffs reapplied for a modification in January 2010. (*Id.* ¶ 45.) In February 2010, however, plaintiffs "learned for the first time that [defendant] had begun the foreclosure process." (*Id.* ¶ 46.) They "contacted a realtor/broker, Nathan Hitchcock ("Hitchcock") . . ." for help selling the property "since their repeated attempts to seek a modification with [defendant] had proven futile and [p]laintiffs still had a measure of equity . . ." in the property. (*Id.*) When "Hitchcock contacted [defendant] one last time in an effort to save the [property] . . ." (*id.*), a

1    representative "explained that the pre-foreclosure documentation was already in the process of

2    being filed." (*Id.*)  Consequently, "Hitchcock informed the representative that [p]laintiffs had no

3    choice but to sell the [property] and that he would keep [defendant] informed as to any offers he

4    received on the [property]." (*Id.*)

5         In March 2010, plaintiffs put the property up for sale. (*Id.* ¶ 47.)  Plaintiffs allege

6    that "[t]hroughout the period in which [p]laintiffs had the [property] up for sale, they continued to

7    try to work with [defendant] on a modification.  When the [property] was sold on or about July 8,

8    2010, [p]laintiffs were still waiting to hear from [defendant] about their most recent attempt at

9    securing a modification." (*Id.* ¶ 48.)  They further allege that when they began the modification

10   process, "they estimate they had over $200,000.00 in equity . . . .  When the [property] was sold,

11   [p]laintiffs only had approximately $80,000.00 in equity remaining in the [property]." (*Id.* ¶ 49.)

12        B.      Procedural Background

13        Plaintiffs commenced this action in Sacramento County Superior Court on July 5,

14   2013.  (ECF 1-1.)  Defendant removed the action on diversity grounds, 28 U.S.C. § 1332.  (*Id.*

15   ¶ 9.)  Plaintiffs' First Amended Complaint alleges the following seven claims: (1) intentional

16   misrepresentation; (2) negligent misrepresentation; (3) promissory estoppel; (4) breach of

17   contract; (5) violations of California's Business and Professions Code sections 17200, *et seq.*

18   ("UCL"); (6) equitable accounting; and (7) unjust enrichment.  (*See* ECF 1-8.)

19        On February 2, 2014, defendant filed the instant motion to dismiss the entire First

20   Amended Complaint for failure to state a claim.  (ECF 4.)  Plaintiffs oppose the motion.  (ECF 9.)

21   Defendant has replied.  (ECF 10.)

22   II.     JUDICIAL NOTICE

23        Defendant asks the court to take judicial notice of the following documents:

24   (a) plaintiffs' First Amended Complaint filed in the Sacramento County Superior Court (ECF 6,

25   Ex. 1); (b) the Grant Deed recorded with the Contra Costa County Recorder's Office as

26   instrument number 2003-0388372-00 on August 8, 2013 (*id.*, Ex. 2); (c) the Deed of Trust

27   ("DOT") recorded with Contra Costa Recorder's Office as instrument number 2003-0388374-00

28   on August 8, 2013 (*id.*, Ex. 3); (d) the Purchase and Assumption Agreement between the Federal

1    Deposit Insurance Corporation ("FDIC") and Chase (*id.*, Ex. 4); (e) the Notice of Default

2    recorded with the Contra Costa County Recorder's Office as instrument number

3    2010-0096284-00 on May 13, 2010 (*id.*, Ex. 5); and (f) the July 8, 2010 Grant Deed from the

4    2010 sale of the Subject Property recorded with the Contra Costa County Recorder's Office as

5    instrument number 2010-0136174-00 on July 8, 2010 (*id.*, Ex. 6).  Plaintiffs have not opposed

6    defendant's request.

7           The court need not take judicial notice of the First Amended Complaint as it is the

8    same complaint that has been removed to this court.  As to the remaining documents, the court

9    grants defendant's request because each of the documents requested to be judicially noticed is a

10   matter of public record, is not subject to reasonable dispute, and is capable of accurate and ready

11   determination. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may

12   take judicial notice of undisputed matters of public record, including documents on file in federal

13   or state courts." (internal quotation marks omitted)).

14   III.   LEGAL STANDARD ON A MOTION TO DISMISS

15          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

16   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

17   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

18   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

19   1990).

20          Although a complaint need contain only "a short and plain statement of the claim

21   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

22   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

23   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

24   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

25   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

26   conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

27   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

28   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

1  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

2  interplay between the factual allegations of the complaint and the dispositive issues of law in the

3  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

4       In making this context-specific evaluation, this court must construe the complaint

5  in the light most favorable to the plaintiff and accept as true the factual allegations of the

6  complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal

7  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted

8  in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to

9  judicial notice" or to material attached to or incorporated by reference into the complaint.

10  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

11       Moreover, a court's consideration of documents attached to a complaint or

12  incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a

13  motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003);

14  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

15       Finally, a party may raise a statute of limitations argument in a motion to dismiss

16  if it is apparent from the face of the complaint that the complaint was not timely filed and that

17  plaintiff will be unable to prove facts to establish the timeliness of the claim.  *Von Saher v.*

18  *Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010); *Supermail Cargo, Inc. v. United*

19  *States*, 68 F.3d 1204, 1206 (9th Cir. 1995).

20  IV.   ANALYSIS

21       A.   Statutes of Limitations

22       Defendant contends the following claims are time-barred: (1) intentional

23  misrepresentation; (2) negligent misrepresentation; (3) promissory estoppel; and (4) unjust

24  enrichment.  (ECF 10 at 3–4.)

25       From the parties' briefs it appears the parties dispute: (1) what the appropriate

26  statutes of limitations are for the promissory estoppel and negligent misrepresentation claims; and

27  (2) what the correct accrual dates are for all four of the above four claims.

28  /////

1    Plaintiffs filed their original complaint on July 5, 2013.  (*See* ECF 1-1.)  Thus, for

2  any claim with a two-year statute of limitations, the accrual date cannot precede July 5, 2011,

3  unless tolling applies; for those with three-year statutes of limitations, the accrual date cannot

4  precede July 5, 2010, unless tolling applies.

5    The court begins its analysis by addressing which statutes of limitations are

6  applicable to the promissory estoppel and negligent misrepresentation claims, because the parties

7  dispute the correct limitations period for each of those two claims.  (*See* ECF 5 at 3–4; ECF 9 at

8  4–5).

9    As a general matter, federal courts apply state statutes of limitations in diversity

10  actions.  *See Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–10 (1945).  Moreover, in

11  California, "the nature of the right sued upon, not the form of action or the relief demanded,

12  determines the applicability of the statute of limitations."  *Jefferson v. J. E. French Co.*, 54 Cal.

13  2d 717, 718 (1960); *see also Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) (stating that

14  to avoid permitting the plaintiff to avert a statute of limitations through "artful pleading,"

15  California courts "look to the gravamen of the cause of action"); *Day v. Greene*, 59 Cal. 2d 404,

16  411 (1963) ("The statute of limitations to be applied is determined by the nature of the right sued

17  upon, not by the form of the action or the relief demanded.").

18    1.    Promissory Estoppel

19    Defendant argues the statute of limitations for promissory estoppel is two years.

20  (ECF 5 at 3.)  Plaintiffs argue in a footnote of their opposition, asserting with no authority, that

21  because the estoppel claim "is meant to mirror the [b]reach of [c]ontract allegations entirely, . . .

22  the statute of limitations is four years."  (ECF 9 at 11 n.6.)

23    Here, the gravamen of plaintiffs' First Amended Complaint is fraud.  The basis of

24  the action is that defendant "fraudulently induced [plaintiffs] to participate in the modification

25  process instead of seeking other alternatives[.]"  (Compl. ¶ 71.)  The promissory estoppel claim

26  incorporates preceding paragraphs containing statements constituting fraud and alleges that

27  plaintiffs "made monthly [Trial Period Plan] payments for a modification [defendant] never truly

28  intended to grant to [them]."  (*Id.* ¶ 89.)  Accordingly, even though plaintiffs assert that the

1    allegations are meant to mirror their breach of contract claim and thus a four-year limitations

2    period ought to apply, the court finds that the statute of limitations for the promissory estoppel

3    claim in the present case is three years because the gravamen of the promissory estoppel claim is

4    fraud.  *See* CAL. CIV. PROC. CODE § 338(d) (In California, a claim of fraud is governed by a three-

5    year limitations period); *see Agair Inc. v. Shaeffer*, 232 Cal. App. 2d 513, 517 (1965) ("[A three-

6    year limitations applies] even though there may be involved in some cases the breach of an oral

7    agreement, provided that the gravamen of such actions is either actual or constructive fraud or

8    mistake.  It exists when conduct, though not actually fraudulent, has all actual consequences and

9    all legal effects of actual fraud.").

10                  2.   Negligent Misrepresentation

11                  Defendant argues the statute of limitations for negligent misrepresentation is two

12   years.  (ECF 5 at 3.)  Plaintiffs respond "where the allegations on a negligent misrepresentation

13   claim revolve around fraudulent activity, then the statute of limitations is three years."  (ECF 9 at

14   10.)

15                  In California, negligent misrepresentation is a form of deceit, or fraud.  *Eddy v.*

16   *Sharp*, 199 Cal. App. 3d 858, 864 (1988).  In fact, "the term fraud may be used to describe not

17   just an intentional misrepresentation but as well certain misrepresentations that are merely

18   negligent, as the separate and distinct tort of negligent misrepresentation is a species of the tort of

19   deceit."  *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 144 Cal. App. 4th 1175,

20   1184 (2006) (internal quotation marks omitted).

21                  However, the limitations period for negligent misrepresentation depends on the

22   facts and circumstances of the case.  *See William L. Lyon & Associates, Inc. v. Superior Court*,

23   204 Cal. App. 4th 1294, 1313 (2012) (declining to determine whether the statute of limitations

24   was two or three years for negligent misrepresentation).  For example, when the allegations show

25   a failure to meet a standard of reasonable care by someone owing a duty of care, courts apply a

26   two-year limitations period to negligent misrepresentation claims.  *See Ventura County National*

27   *Bank v. Macker* ("*Macker*"), 49 Cal. App. 4th 1528 (1996) (holding that "in an action against

28   accountants for negligent misrepresentation, the statute of limitations is two years"); *Loken v.*

1   *Century 21-Award Properties*, 36 Cal. App. 4th 263, 270 (1995) (finding a two-year limitations

2   period "where the negligent misrepresentation cause of action [arose] out of [the] duty to inspect

3   and disclose"); *Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1478 (1992) (finding

4   a two-year limitation for negligent misrepresentation because the claim was based on the same

5   facts as the bad faith claim).

6           On the other hand, when the allegations are based on deceit, courts are more

7   inclined to apply a three-year limitations period applicable to fraud claims.  *See Broberg v.*

8   *Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920 (2009) (finding a three-year limitations

9   period for negligent misrepresentation); *Williams v. Wells & Bennett Realtors*, 52 Cal. App. 4th

10  857, 865 (1997) ("The key to the holding in *Loken* is the court's statement that even though a

11  cause of action is labeled as negligent misrepresentation, if it is derived from the statutory duty to

12  inspect and disclose, it is subject to the two-year limitation."); *Fanucci v. Allstate Ins. Co.*,

13  638 F. Supp. 2d 1125, 1133 n.5 (N.D. Cal. 2009) (finding a three-year limitations period for

14  negligent misrepresentation where the claim included allegations of deceit).

15          The negligent misrepresentation claim in this case is based on the same facts as the

16  intentional misrepresentation claim.  This is not a case where the claim is akin to professional

17  negligence or bad faith.  *See Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates,*

18  *Inc.*, 115 Cal. App. 4th 1145, 1156 (2004); *Smyth*, 5 Cal. App. 4th at 1478.  Moreover, this case is

19  distinguishable from *Macker* where the court found that the claim sounded in negligence and thus

20  a two-year limitations period applied.  49 Cal. App. 4th 1528.  In *Macker,* the complaint alleged

21  that "defendants lacked sufficient or accurate information to make representations concerning the

22  company's financial condition, and that they did not possess sufficient knowledge, expertise, or

23  experience to accurately evaluate the company's financial condition."  *Id.* at 1530.  The trial court

24  dismissed the fraud and intentional misrepresentation claims, and found a two-year limitations

25  period applicable to the negligent misrepresentation claim.  *Id.*  The appellate court affirmed this

26  decision because, unlike here, the negligent misrepresentation "allegations show[ed] a failure to

27  meet a standard of reasonable care which result[ed] in the tortious invasion of a property right."

28  *Id.* at 1531.

1    The court finds plaintiffs' negligent misrepresentation claim is a form of deceit

2    and is based in fraud.  Thus, California's three-year statute of limitation for fraud claims applies.

3    CAL. CIV. PROC. CODE § 338(d) (2013).

4    After determining what statues of limitations to apply to plaintiff's promissory

5    estoppel and negligent misrepresentation claims and because there is no dispute as to the correct

6    limitations period applicable to intentional misrepresentation and unjust enrichment claims, the

7    court turns to the accrual date issue.

8            3.    Accrual Date

9    Defendant argues that "at the very latest, [p]laintiffs were aware of Chase's

10   purported wrongdoing in February 2010."  (ECF 5 at 3 (alterations omitted).)  It asserts that the

11   intentional misrepresentation claim must have been brought by February 2013, three years "after

12   the date that they admittedly learned that the defendant had initiated foreclosure proceedings and

13   was not intending to provide [p]laintiffs with a loan modification."  (*Id.* at 3.)

14   Plaintiffs appear to respond with two arguments: (1) that the injury suffered

15   occurred when their home was sold on July 8, 2010, and thus the statute of limitations did not

16   accrue until that date; and (2) that they had not discovered the fraudulent conduct until their home

17   was sold, relying on the discovery rule.  Specifically, plaintiffs reject defendant's argument that

18   their claims accrued when they "were told that preforeclosure documentation was already in the

19   process of being filed."  (ECF 9 at 5 (citation omitted).)  Instead, plaintiffs say their claims

20   accrued when they "suffered the last of their damages: the loss of equity as a result of waiting to

21   sell the [s]ubject [p]roperty in reliance on [d]efendant's fraudulent attempt to keep them in the

22   modification process."  (*Id.* at 5.)  They further allege their claims had not accrued by February

23   2010 because they "continued to work on a modification," and "when the house [was] sold on

24   July 8, 2010, [p]laintiffs were still waiting to hear from [d]efendant on their latest attempt at a

25   modification."  (*Id.* at 5.)

26   Here, the accrual date for each of plaintiff's four claims is not apparent from the

27   face of the complaint.  Plaintiffs' only argument that the accrual date was within the three-year

28   limitations period, without relying on the discovery rule, is that their injury was not complete

11

1   until the home was sold on July 8, 2010.  It is unclear from the complaint whether the injuries

2   alleged occurred before or after that date.  But plaintiffs are not required to "specifically allege

3   when the cause of action accrued" in the complaint, the court declines to further decide the statute

4   of limitations issues on this motion.  *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407

5   (9th Cir. 1995) (internal citation omitted) (noting "there is no requirement that a plaintiff

6   specifically allege when the cause of action accrued—that is the defendant's responsibility if it

7   wishes to raise a limitations defense.").  Defendant, in arguing only that plaintiffs should have

8   known of their claims by February 2010 (ECF 5 at 4), has not met its burden here.

9        The court thus turns to the sufficiency of the individual claims.

10      B.     Sufficiency of the Allegations in the First Amended Complaint

11       Because, as explained below, plaintiffs' misrepresentation claims rely on the same

12  alleged fraudulent conduct, the court addresses both claims together.

13       1.     Intentional and Negligent Misrepresentation

14       Defendant argues that the misrepresentation claims are not pled sufficiently for

15  three reasons: (1) the specificity requirement in California and under federal Rule 9(b) requires

16  plaintiffs to identify who made the misrepresentations; (2) the Statute of Frauds prohibits

17  recovery; and (3) plaintiffs "have not established that the alleged misrepresentations somehow

18  caused their damages."  (ECF 5 at 5–6.)

19       Plaintiffs counter as follows: (1) "[w]here the identities of speakers alleged to have

20  made material misrepresentations [are] unknown, but discoverable," the plaintiff need not plead

21  that information (ECF 9 at 6); (2) contract law does not apply to the fraud claim, and reliance is a

22  question of fact (*id.* at 6–7); and (3) the "nexus" between the misrepresentations and plaintiffs'

23  damages is sufficient because defendant "specifically implored them to work on a modification"

24  after plaintiffs informed defendant that they were planning to sell the property, and "they

25  expended time and money on the modification process" (*id.* at 8).

26       Plaintiffs further argue the elements of the ten alleged misrepresentations are met.

27  (*Id.* at 9.)  In the alternative, plaintiffs reason that "[e]ven if every other allegation of fraud fails

28  /////

1  . . . , [allegation number 5] should survive dismissal" because "Chris Burnett, as one of

2  Defendant's agents . . . ," is specifically pled.  (*Id.*)

3          The court addresses the parties' arguments in turn.

4          a.     The Specificity Requirement

5          Federal law governs the pleading standards in federal courts.  *Vess v. Ciba-Geigy*

6  *Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and

7  elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").  In

8  particular, courts in the Ninth Circuit have applied the Rule 9(b) standard to claims of intentional

9  and negligent misrepresentation, which in California are a species of fraud.  *Meridian Project*

10  *Systs., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1219–20 (E.D. Cal. 2005); *but see*

11  *Petersen v. Allstate Idem. Co.*, 281 F.R.D. 413, 417–18 (C.D. Cal. 2012) (questioning whether the

12  Rule 9(b) standard for fraud applies to negligent misrepresentation).  Assuming without deciding

13  that Rule 9(b) applies to negligent misrepresentation claims, plaintiffs' allegations are sufficient

14  to meet the heightened standard as discussed below.

15          In this case, plaintiffs' intentional misrepresentation claim contains allegations

16  amounting to fraud.  For instance, plaintiffs allege that defendant's agent "knew or should have

17  known that [p]laintiffs were seeking a modification of their original loan and that [Defendant] had

18  no intention of actually granting the requested modification."  (Compl. ¶ 69.)  Plaintiffs'

19  negligent misrepresentation claim relies on the same facts as their intentional misrepresentation

20  claim.  (*Id.* ¶ 74.)  Accordingly, the court finds both sound in fraud.  *Lazar v. Superior Court*, 12

21  Cal. 4th 631, 638 (1996) (reviewing elements of fraud claim); *see also Harvey v. Bank of Am.,*

22  *N.A.*, 906 F. Supp. 2d 982, 995 (N.D. Cal. 2012) (where plaintiff's negligent misrepresentation

23  claim relied on "allegations identical to those supporting his intentional misrepresentation claim,"

24  the claims sounded in fraud).

25          Under Rule 9(b), a plaintiff who alleges fraud "must state with particularity the

26  circumstances constituting the fraud," but may "allege[] generally" the state of mind animating

27  the fraud.  The pleading must "be specific enough to give defendants notice of the particular

28  misconduct . . . so that they can defend against the charge and not just deny that they have done

1   anything wrong." *Sanford v. Memberworks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting

2   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  To avoid dismissal, the

3   complaint must describe the time, place, and specific content of the false representations and

4   identify the parties to the misrepresentations.  *Id.*

5              When the allegations otherwise permit the defendant to defend against the charges,

6   this court is not required to dismiss the complaint for plaintiffs' failure to identify a specific

7   representative as the source of a false representation.  *See Swartz v. KPMG LLP*, 476 F.3d 756,

8   764 (9th Cir. 2007) (where several allegations detail[ed] the time, place, and content of

9   representations made by KPMG and B & W to Swartz" not disputed that plaintiff satisfied his

10  pleading burden with respect to those defendants"); *see also Alimena v. Vericrest Fin., Inc.*,

11  964 F. Supp. 2d 1200, 1215 (E.D. Cal. 2013) ("At the pleading stage, [p]laintiffs cannot be

12  expected to have further knowledge of what took place within [the lender corporation].").

13             Plaintiffs have alleged ten separate communications, each one indicating a

14  statement; a timeframe; the medium by which the communication was conveyed; what was false

15  or misleading about the representation; allegations of intent; and plaintiffs' reliance.  (Compl.

16  ¶¶ 60–69.)  Moreover, plaintiffs have identified one individual, Chris Burnett, whose name

17  appeared in a letter, the only alleged written misrepresentation.  (ECF 9 at 9.)  Defendant admits,

18  albeit with some equivocation, that this communication "*debatably* has been adequately alleged

19  with requisite specificity."  (ECF 10 at 5 (emphasis in original).)

20             The court finds plaintiffs have sufficiently pled the time, place, and specific

21  content of all the alleged misrepresentations so as to allow defendant to defend against plaintiff's

22  misrepresentation claims.  *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979,

23  990–91 (2004) (intentional misrepresentation elements); *B.L.M v. Sabo & Deitsch*, 55 Cal. App.

24  4th 823, 834 (1997) (negligent misrepresentation elements).

25                              b.      Statute of Frauds

26             Defendant next argues that in light of the Statute of Frauds, plaintiffs' reliance on

27  the alleged misrepresentations "was entirely unreasonable as any modification to the DOT and

28  Note is both legally and contractually required to be in writing."  (ECF 5 at 5.)

14

1        Plaintiffs respond that "the thrust of each allegation of misrepresentation" is not

2    "contract-based," and "whether there was an actual contract formed by the verbal statements

3    [d]efendant's agents made is irrelevant when discussing the intent to induce [p]laintiffs' action or

4    reliance." (ECF 9 at 7).  Plaintiffs further argue reliance is a question of fact.  (*Id.*)

5        Defendant's Statute of Frauds argument is unavailing.  An action for fraud can be

6    maintained despite the lack of an enforceable promise.  *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18,

7    31 (1985).

8        Plaintiffs also have adequately pled reliance in each alleged misrepresentation, by

9    alleging a statement indicating defendant's alleged inducement of plaintiffs into the loan

10    modification process (Compl. ¶¶ 60–69).  *See Alimena*, 964 F. Supp. 2d at 1214.

11            c.       Damages

12        Defendant argues plaintiffs "must establish that there is a 'nexus' between the

13    alleged fraud by the lender and the borrower's claimed injury in order to recover." (ECF 5 at 6.)

14    Specifically, defendant argues that because plaintiffs admittedly "were unable to make [their]

15    payments"; "were permitted to pay less than what they were required to pay each month"; and

16    "were able to live at the [property] while only making partial or no payments on their mortgage,"

17    plaintiffs "have utterly failed to allege that they sustained any damages purportedly caused by

18    Chase." (*Id.* (alteration omitted).)

19        Plaintiffs agree a nexus is required but respond that the First Amended Complaint

20    satisfies the nexus requirement, because it states that plaintiffs informed defendant's agents "that

21    they were planning to sell the [property] as they had adequate equity . . . but that [d]efendant's

22    agent specifically implored them to work on a modification instead . . . ." (ECF 9 at 8.)  They

23    argue correctly that the complaint alleges lost equity and expenditure of time and money on the

24    modification process.  (*See* Compl. ¶ 81.)

25        "There is a consensus that the causal elements . . . must be specifically pleaded."

26    *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal.

27    App. 4th 35, 50 (2009).  Because plaintiffs claim damages other than the decrease in value of the

28    home, the court finds the nexus request satisfied at this pleading stage.  *Cf. Bank of America*

1   *Corp. v. Superior Court*, 198 Cal. App. 4th 862, 873 (2011) (where economic injury was due to a

2   "generalized decline in California residential property values," there was no nexus between the

3   fraudulent concealment claim and plaintiffs' economic harm).  The damages allegations are

4   sufficient to put defendant on notice of what damages plaintiffs allege were caused by

5   defendant's actions.

6   　　　　The court DENIES defendant's motion to dismiss plaintiffs' intentional and

7   negligent misrepresentation claims.

8   　　　　　　　　2.　　　Promissory Estoppel

9   　　　　Defendant argues generally that plaintiffs "failed to sufficiently plead all the

10  elements necessary" to assert a promissory estoppel claim.  (ECF 5 at 6.)  Specifically, it argues:

11  (1) the claim is barred by the Statute of Frauds, "as any agreement to modify the terms of a loan

12  must be in writing"; (2) the promise is not definite because "the facts pled are simply too vague

13  and general to demonstrate . . . a clear, unconditional, and unambiguous promise . . ."; (3) there is

14  no enforceable agreement because eligibility for a loan modification "does not translate into a

15  guarantee"; and (4) plaintiffs "have not shown any damages as a result of their reliance on

16  Chase's purported promises."  (*Id.* at 7–8.)

17  　　　　Plaintiffs respond they have "specifically [pled] each and every element" of the

18  claim.  (ECF 9 at 11.)  Specifically, they argue: (1) the promises at issue do not constitute a

19  "permanent modification," which would require a written agreement, and the TPP was in writing;

20  (2) the plain language of the operative complaint states there is a clear promise; (3) the

21  highlighted portions of paragraph 83 of the complaint show the actual terms of the TPP, and the

22  result; and (4) the damages alleged resulted from plaintiffs' willingness to sell their home at an

23  earlier time.  (*Id.*)  Plaintiffs further state the claim "is meant to mirror the Breach of Contract

24  allegations entirely," and thus is an alternative to the breach claim if the court finds no

25  consideration.  (*Id.*)  Accordingly, plaintiffs' argument appears to be limited to the "promises

26  inherent in the w]ritten TPP."  (*Id.* at 12.)

27  　　　　"The elements of promissory estoppel are: (1) a clear promise, (2) reliance,

28  (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and

16

1   not performed." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1171 (E.D. Cal. 2010)

2   (citing *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1471

3   (2007)).

4                                    a.      Statute of Frauds

5                  As to defendant's Statute of Frauds arguments, "the doctrine of promissory

6   estoppel is used to provide a substitute for the consideration which ordinarily is required to create

7   an enforceable promise." *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 672 (1974).

8   California courts have held that because consideration is not required, the Statute of Frauds does

9   not necessarily apply. *See, e.g., Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 230–31 (2011)

10   (oral promise to postpone mortgage payments was unenforceable for lack of consideration, but

11   sufficient for a promissory estoppel claim); *Sutherland v. Barclays Am./Mortgage Corp.*, 53 Cal.

12   App. 4th 299, 312 (1997) (statute of frauds did not apply to the promissory estoppel claim, as

13   consideration is not required); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432,

14   442 (1988) ("Estoppel can act as one further exception to imposition of the statute of frauds.").

15   The court rejects defendant's first argument.

16                                    b.      Promise and Enforceability

17                  As to the second and third arguments, defendant's reliance on *Ehlert v. America's*

18   *Servicing Co.* is inapposite. *See* No. 11-1359, 2011 WL 4862426 (S.D. Cal. Oct. 12, 2011); (ECF

19   10 at 5.)  In *Ehlert,* "the alleged verbal agreement was that [p]laintiffs would qualify for a loan

20   modification if they were timely in making three trial payments." *Ehlert*, 2011 WL 4862426, at

21   *3 (internal citation and quotation marks omitted).  The court found the statement that plaintiffs

22   "would qualify" was not a sufficient promise to assert either a breach of contract or promissory

23   estoppel claim. *Id.* at *3–4.

24                  Here, in contrast, plaintiffs allege that the loan defendant "clearly and

25   unambiguously promised that if they made three consecutive monthly TPP payments of

26   $1,394.00, their modification would become permanent," not that plaintiffs would merely qualify.

27   (Compl. ¶ 83; *see also id.* ¶ 65.)  The alleged oral promise, presumed to be true on this motion, is

28   sufficient.

c.      Reliance

As to the reliance element, plaintiffs have sufficiently alleged reasonable detrimental reliance, in alleging they made the full payments (*id.* ¶ 85), foregoing other remedies, and postponing sale of their home, based on defendant's alleged promise that the loan modification would become permanent (*id.* ¶ 87).  *See Alimena*, 964 F. Supp. 2d at 1218–19 (holding that plaintiffs sufficiently alleged reasonable and foreseeable reliance on the lender's promise by "tendering four trial payments of $1667 and submitting the requested documentation"); *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 805 (2013); *Turbeville v. JPMorgan Chase Bank*, No. 10-01464, 2011 WL 7163111, at *5 (C.D. Cal. Apr. 4, 2011).

d.      Damages

As to the damages element, plaintiffs have sufficiently alleged damages because they allege they "have suffered damages in the form of increased arrears, interests and penalties." (Compl. ¶ 89.)  Defendant does not argue that the types of damages identified by plaintiffs are unrecoverable.  Plaintiffs' allegations in proven may support a plausible claim of promissory estoppel.

The court DENIES defendant's Motion to Dismiss plaintiffs' promissory estoppel claim.

3.      Breach of Contract

Defendant argues the breach of contract claim cannot proceed because: (1) plaintiffs "fail[ed] to provide the alleged contract or set forth any of the specific terms allegedly breached by Chase," and (2) the contract was not supported by adequate consideration. (ECF 5 at 9.)  Plaintiffs respond, "TPPs have been recognized as binding written contracts," and they complied with the terms of the TPP.  (ECF 9 at 14.)

Courts looks to the applicable section of the TPP itself to determine whether or not the "more natural and fair interpretation of the TPP is that the defendant must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain." *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 883 (9th Cir. 2013).  Here, plaintiffs

18

1    have alleged that the instant TPP executed in or about June 2009 indicated that "[p]laintiffs were

2    to make timely payments of $1,394.00 on a trial basis for three consecutive months at which time

3    their modification was to be made permanent." (Compl. ¶ 91.)  Plaintiffs, however, have not

4    included the precise language from the TPP.  Instead, plaintiffs couch a legal conclusion as fact

5    by asserting defendant was required to modify the loan after plaintiffs complied.  (*Id.*)

6             As to the consideration requirement, "California law recognizes that a detriment

7    constituting consideration includes . . . 'expenditure of time and energy.'" *Ansanelli v. JP*

8    *Morgan Chase Bank, N.A.*, No. 10-03892, 2011 WL 1134451, at *4 (N.D. Cal. Mar. 28, 2011)

9    (quoting *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665, 673 (1974)).  Here, plaintiffs'

10   allegations clearly show that they expended time and energy in seeking to have their mortgage

11   modified.  (*See* Compl.)

12            The court GRANTS defendant's motion to dismiss plaintiff's breach of contract

13   claim, while providing plaintiffs leave to amend if they can do so consonant with Rule 11.

14            4.       Unfair Business Practices

15            Defendant argues plaintiffs' UCL claim cannot proceed for three principal reasons.

16   First, defendant argues plaintiffs lack standing to assert a UCL claim.  (ECF 5 at 10.)  Second,

17   defendant argues plaintiff cannot meet any of the alternative grounds for a UCL claim.  (*Id.* 10–

18   12.)  Finally, defendant argues plaintiffs' allegations do not support relief under the UCL.  (*Id.*

19   12–13.)

20            Plaintiffs respond they do have standing because they have lost money and

21   property.  (ECF 9 at 16.)  Because plaintiffs have sufficiently pled intentional and negligent

22   misrepresentation claims, they argue, the "unlawful" prong of the UCL is satisfied.  (*Id.*)

23   Plaintiffs further respond the allegations also satisfy the "unfair" and "fraudulent" prongs.  (*Id.* at

24   16–18.)  Finally, plaintiffs state they do not seek damages, "but rather restitution and

25   disgorgement."  (*Id.* at 18.)

26   /////

27   /////

28   /////

1          a.      Standing

2          "To have standing under the UCL, Plaintiff must allege that she suffered injury in

3   fact and has lost money or property as a result of the unfair competition." *Plastino v. Wells*

4   *Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) (internal quotation marks omitted).

5          As explained above, plaintiffs have alleged sufficient injury in fact, and so have

6   standing to bring a UCL claim.

7          b.      Grounds of UCL Claim

8          "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

9   fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

10  *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal

11  quotation marks omitted); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192,

12  1201 (E.D. Cal. 2010).  Because the statute is phrased in the disjunctive, a practice may be unfair

13  or deceptive even if it is not unlawful, or vice versa.  *Lippitt*, 340 F.3d at 1043.

14         An action is unlawful under the UCL and independently actionable if it constitutes

15  a violation of another law, "be it civil or criminal, federal, state, or municipal, statutory,

16  regulatory, or court-made."  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383

17  (1992); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1999).  Because the statute

18  borrows violations of other laws, a failure to state a claim under the "borrowed statute" translates

19  to a failure to state a claim under the unlawful prong of the UCL.  *See Saunders*, 27 Cal. App. 4th

20  at 838–39.

21         An act is "unfair" under the UCL if it "significantly threatens or harms

22  competition, even if it is not specifically proscribed by another law" or "is tethered to some

23  legislatively declared policy . . . ."  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

24  20 Cal. 4th 163, 180, 186–87 (1999); *Swanson v. EMC Mortg. Corp.*, No. 09–1507, 2009 WL

25  4884245, at *9 (E.D. Cal. Dec. 9, 2009).  "[T]he 'unfairness' prong has been used to enjoin

26  deceptive or sharp practices . . . ."  *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257

27  (2010) (internal citation and quotation marks omitted).  In a federal court, an unfair business

28  /////

20

1 │ practice claim grounded in fraud must be pled with particularity under Rule 9(b).  *Vess*, 317 F.3d

2 │ at 1103; FED. R. CIV. P. 9.

3 │        Because plaintiffs' unfair competition claim is based, in part, on the viable

4 │ intentional misrepresentation claim (Compl. ¶ 97), plaintiffs may assert a UCL claim under the

5 │ "unlawful" prong of the statute.

6 │                    c.      Relief

7 │        While plaintiffs concede damages are unavailable under a UCL claim, they

8 │ correctly point out they seek "restitution and disgorgement."  (ECF 9 at 18 (citing Compl.

9 │ ¶ 102).)

10 │        The court DENIES defendant's motion to dismiss plaintiffs' UCL claim.

11 │        5.      Equitable Accounting

12 │        Defendant argues for dismissal of the accounting claim because plaintiffs

13 │ "concede that they are in debt but simply dispute the amount owed," and no fiduciary relationship

14 │ existed.  (ECF 5 at 13.)   Plaintiffs respond that paragraph 105 of the complaint is not an

15 │ admission of debt, and they could not be in debt as they have now sold the property.  (ECF 9 at

16 │ 19.)  Plaintiffs assert that a fiduciary relationship is not required for accounting.  (*Id.* at 18.)

17 │        "A cause of action for an accounting requires a showing that a relationship exists

18 │ between the plaintiff and defendant that requires an accounting, and that some balance is due the

19 │ plaintiff that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal. App.

20 │ 4th 156, 179 (2009); *Canales v. Fed. Home Loan Mortg. Corp.*, No. 11-2819,  2011 WL

21 │ 3320478, at *8 (C.D. Cal. Aug. 1, 2011) (stating elements of equitable claim for accounting).

22 │        Here, the First Amended Complaint provides:  "[T]he entire indebtedness[,]

23 │ including the exact entity to which [p]laintiffs are in debt, if [p]laintiffs are in debt at all, is in

24 │ dispute and in question."  (Compl. ¶ 105.)  It does not, however, allege plaintiffs are owed

25 │ anything.

26 │        The court GRANTS defendant's motion to dismiss plaintiff's claim for equitable

27 │ accounting, giving plaintiffs leave to amend if they can do so consonant with Rule 11.

28 │ /////

1               6.      Unjust Enrichment

2              Defendant argues unjust enrichment is not a separate claim.  (ECF 5 at 14.)

3   Further, defendant argues the existence of the DOT "precludes recovery for unjust enrichment as

4   a matter of law."  (*Id.*)  Plaintiff responds unjust enrichment can be pled independently.  (ECF 9

5   at 19.)  Plaintiff further responds in a conclusory fashion by re-asserting that paragraphs 110 and

6   111 of the complaint satisfy the two elements of unjust enrichment.  (ECF 9 at 20.)

7              Unjust enrichment, as defendants argue, is not an independent cause of action, but

8   rather is pled as part of a quasi-contract claim "in order to avoid unjustly conferring a benefit

9   upon a defendant where there is no valid contract."  *Ram v. Wachovia Mortg., FSB*, 2011 WL

10  1135285, at *9 (E.D. Cal. Mar. 25, 2011).  The elements of an unjust enrichment claim are

11  "'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'"

12  *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) (quoting *Lectrodryer v.*

13  *SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

14             Here, plaintiffs have not pled a benefit conferred that was not governed by a

15  contract.  Paragraph 14 of the DOT governs the parties' rights regarding fees and loan charges.

16  (DOT ¶ 14, ECF 1-4.)  The complaint expressly states that defendant "only engaged in the

17  modification process . . . in order to collect fees and penalties.  Therefore, as between [p]laintiffs

18  and [defendant], it would be unjust for [defendant] to retain the benefit conferred upon it by

19  [p]laintiffs."  (Compl. ¶ 111, ECF 1-8.)  The only benefit the complaint addresses is "fees and

20  penalties."  (*Id.* at ¶¶ 110, 111.)  The claim as currently pled does not allege the benefit conferred

21  was unjust.  *See Reyes v. Wells Fargo Bank, N.A.*, No. 10-01667, 2011 WL 30759, at *18 (N.D.

22  Cal. Jan. 3, 2011) (plaintiff did not allege "unjust" element "at least as to the payments that were

23  made prior to the foreclosure, because Plaintiffs owed this money . . . under the deed of trust").

24             The court GRANTS defendant's Motion to Dismiss plaintiffs' unjust enrichment

25  claim, with leave to amend.

26  /////

27  /////

28  /////

1        For the foregoing reasons, the court ORDERS as follows:

2        1.   Defendant's Motion to Dismiss is GRANTED with leave to amend as to

3             plaintiffs' claims for breach of contract, equitable accounting, and unjust

4             enrichment.

5        2.   Defendant's Motion to Dismiss is DENIED as to plaintiffs' claims for

6             intentional misrepresentation, negligent misrepresentation, promissory estoppel,

7             and UCL.

8        3.   Plaintiffs shall have 21 days from the date of this order to file a Second

9             Amended Complaint.

10       IT IS SO ORDERED.

11   DATED:  May 20, 2014.

12   _____

13                   UNITED STATES DISTRICT JUDGE